UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

STEPHEN MONTALTO PLAINTIFF

VS. CIVIL ACTION NO. 3:06CV444TSL-JCS

VIACOM INTERNATIONAL, INC. DEFENDANT

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Viacom International, Inc. (Viacom) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has not responded to this motion, and the time for doing so has now passed. Having considered the memorandum of authorities, together with attachments, submitted by defendant, the court concludes that the motion is well taken and should be granted.

In his complaint, plaintiff alleges that he is engaged in the music industry as a musical artist, disc jockey and general entertainer; that he has used the name "Joe Shmo" as his entertainment name and has used the "Joe Shmo" mark since 2001 on compact disc covers and party flyers; that he applied to the United States Trademark Office for registration of the "Joe Shmo" mark and that the mark was registered to him on March 8, 2005 for "music compact discs"; and that in and before 2003, defendant unlawfully, willfully and maliciously used the "Joe Schmo" mark in broadcasting on its cable network SpikeTV of a television show

called "The Joe Schmo Show," and thereby infringed plaintiff's mark and caused economic detriment to plaintiff. On these allegations, plaintiff has asserted federal claims for trademark infringement and unfair competition, and state law claims for unfair competition, tortious interference with business advantage and negligent misrepresentation.

In its motion for summary judgment, Viacom argues that plaintiff's federal claim for trademark infringement and for unfair competition should be dismissed because plaintiff cannot show a likelihood of confusion between his use of the "Joe Shmo" mark for music compact discs and Viacom's airing of "the Joe Schmo Show," which it describes as a reality television program with a storyline as a parody of reality television game shows.[1] "To prove trademark infringement and unfair competition under federal law, [plaintiff] must show that the use of the ["Joe Schmo"] mark by [defendant] is likely to cause confusion among consumers as to the source, affiliation, or sponsorship of [defendant's] products or services." Scott Fetzer Co. v. House of Vacuums Inc., 381 F.3d

---

[1] As explained in the affidavit of Chris Linn, Viacom's Senior Vice President of Series Development and Programming,

> The program's concept was that the central character, referred to as "Joe Schmo," believed he was one of nine contestants on a reality television show called "Lap of Luxury." Unbeknownst to the main character, everyone else on the program was an actor and the program itself was all an elaborate hoax designed to elicit comedic reactions."

477, 483 (5th Cir. 2004). "A 'likelihood of confusion' means that confusion is not just possible, but probable." Id.

> In assessing whether use of a mark creates a likelihood of confusion as to affiliation or endorsement, we consider the "digits of confusion," a list of factors that tend to prove or to disprove that consumer confusion is likely. Those factors are: (1) the type of mark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion.

Id.at 484-85 (quoting Westchester Media v. PRL USA Holdings, Inc., 214 F.3d 658, 664 (5th Cir. 2000)).

"The first digit, that is, the type of trademark allegedly infringed, questions whether the trademark is so distinctive that a consumer encountering the defendant's mark would be likely to assume that the source of a product or service is the owner of the trademark." Lyons Partnership v. Giannoulas, 179 F.3d 384, 389 (5th Cir. 1999). Thus, the "type" of trademark refers to the strength of the senior user's mark; "[t]he stronger the mark, the greater the protection it receives because the greater the likelihood that consumers will confuse the junior user's use with that of the senior user." Elvis Presley Enterprises, Inc. v. Capece, 141 F.3d 188, 201 (5th Cir. 1998) (citations omitted) see also Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 259 (5th Cir. 1980) ("strong marks are widely protected, as contrasted to weak marks") (quoting Lunsford, Julius R., Jr., "Trademark

Basics," 59 Trademark Rep. 873, 878 (1969)); Lyons P'ship, 179 F.3d at 389 ("the stronger the trademark, the more likely that this factor would weigh in favor of the plaintiff").

Here, there is no evidence that plaintiff's mark is distinctive or well known, even in plaintiff's own field of music performance. As defendant notes, plaintiff has offered no evidence that the public has been educated to recognize and accept his "Joe Shmo" mark as a hallmark of the source of his product, which lends support to a conclusion that the mark is weak. Cf. Louisiana World Exposition, Inc. v. Logue, 746 F.2d 1033, 1040 (5th Cir. 1984) (extensive promotion supports finding of strong mark). Moreover, defendant has presented evidence of numerous third-party uses of similar marks by musicians and music groups, including "Joe Schmoe," "Joe and the Schmos," and "Joe Schmo: Music for the Living." Third-party usage weakens a mark and limits the protection to be accorded plaintiff's mark. See Amstar Corp., 615 F.2d at 260. This is particularly true where the mark is used outside the field in which it is used by the plaintiff. See id.; see also Scott Paper Co. v. Scott's Liquid Gold, Inc., 598 F.2d 1225, 1331 (3d Cir. 1978) (plaintiff's ownership of the mark "Scott" as applied to paper products did not preclude defendant's use of "Scott" on furniture polish) (cited in Amstar Corp.).

The second factor, the similarity between the two marks, takes into account the similarity of appearance, sound and

meaning, that is, their "overall impression," not in a vacuum, but rather in the "the context that a customer perceives them in the marketplace. . . ." Scott Fetzer Co., 381 F.3d at 485. See also CICCorp., Inc. v. AIMTech Corp., 32 F. Supp. 2d 425, 436 (S.D. Tex. 1998) ("The court must consider the overall commercial impression of the marks, as well as the setting in which they appear."); Restatement (Third) of Unfair Competition § 21(a)(i) (1995) (stating that "the overall impression created by the [marks] as they are used in marketing the respective goods and services" is relevant to how similar two marks are) (cited in Elvis Presley Enterprises, Inc., 141 F.3d at 197). "In the final analysis this digit turns on whether, under the circumstances in which they are used, the marks are similar enough that customers are likely to conclude that [plaintiff] and [defendant] are associated." CICCorp., Inc., 32 F. Supp. 2d at 436. Defendant submits that even though "Joe Shmo" and "The Joe Schmoe Show" may be phonetically similar (though certainly not identical), they are easy for the public to distinguish in context and as used in connection with totally different goods and services, i.e., in their presentation. This is clearly the case.

The third factor does not support plaintiff's claim of infringement inasmuch as there is no similarity in his and defendant's products; "The Joe Schmo Show" was a television series

aired on cable television while "Joe Shmo" was a mark used on plaintiff's music compact disc.

Plaintiff has offered no evidence as to where or how his compact disc is or has been distributed, and thus has not identified any connection between retail outlets used by the parties or the consumers of their products. But, as defendant points out, even assuming that plaintiff's music discs are distributed in record stores or on-line, those modes of distribution are completely different from cable television.

Neither has plaintiff shown that the parties used the same or similar advertising media. According to defendant, "The Joe Schmo Show" was publicized on cable television, where the show was aired. Plaintiff has offered no evidence of how he advertises his product.

On the digit of intent, there is nothing in the record to indicate that defendant adopted the name "The Joe Schmo Show" with the intent of confusing customers and thereby benefiting from plaintiff's mark. On the contrary, defendant has presented evidence that it believed that there was no conflict in its use of "The Joe Schmo Show" and other "Joe Schmo" marks because of the entirely different nature of its product. Thus, the court finds that defendant did not adopt its mark with the intent of deriving benefit from plaintiff's reputation. <u>See</u> <u>Exxon Corp. v. Texas Motor Exchange of Houston, Inc.</u>, 628 F.2d 500, 506 (5th Cir. 1980).

"The best evidence of likelihood of confusion is provided by evidence of actual confusion." Id. (citing Roto-Rooter Corp. v. O'Neal, 513 F. 2d 44 (5th Cir. 1975)). Plaintiff has offered no evidence of actual confusion.

From the foregoing, it is clear that plaintiff has failed to present sufficient evidence to support a finding of likelihood of confusion. It follows that his federal claims must be dismissed. In addition to his federal claims, plaintiff has undertaken to assert a variety of claims under state law, including for unfair competition, based on his allegation that defendant's use of "The Joe Schmo Show" mark "is likely to confuse the public as to the origin, source or sponsorship of Defendant's services"; for trademark dilution, based on his allegation that defendant's use of "The Joe Schmo Show" mark "is likely to dilute the distinctive quality of the [plaintiff's] Mark and cause injury to Plaintiff's business reputation"; for deceptive trade practices, based on an allegation that defendant has unlawfully held itself out as an authorized user of plaintiff's mark; for negligent misrepresentation, based on an allegation that defendant has negligently misrepresented ownership of plaintiff's mark; and, for tortious interference with business advantage, based on his allegation that defendant broadcast derogatory Joe Schmo episodes when it knew or should have known that plaintiff was a music

artist with a protected mark and would suffer losses from the airing of such episodes.

Defendant submits that plaintiff is foreclosed from bringing any claim for unfair competition under Mississippi law because he did not first attempt to resolve the claim through the informal dispute settlement program established by the Attorney General, as required by Miss. Code Ann. § 75-24-15(2).[2] It argues, alternatively, that even if plaintiff's claim were not barred for that reason, the claim could not succeed because he cannot prove a likelihood of confusion. There is merit to both grounds urged by defendant, and this claim will be dismissed.

According to defendant, plaintiff's putative state law claim for trademark dilution fails because he has not shown that his mark is "famous," an essential element of the claim. Mississippi Code Annotated § 75-25-25 provides as follows:

---

[2] Mississippi Code Annotated § 75-24-5 provides a cause of action for "(B) misrepresentation of the source, sponsorship, approval or certification of goods or services;" "(C) misrepresentation of affiliation, connection or association with, or certification by another;" . . . "(E) "representing the goods or services as having sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have or that a person has sponsorship, approval, status, affiliation or connection that he does not have;" and/or "(H) disparaging the goods, services, or business or another by false and misleading representation of fact." Section 75-24-15(2) states, "In any private action brought under this chapter, the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General."

> The owner of a mark which is famous in this state shall be entitled, subject to the principles of equity, to an injunction against another's use of a mark, commencing after the owner's mark becomes famous, which causes dilution of the distinctive quality of the owner's mark, and to obtain such other relief as is provided in this section. In determining whether a mark is famous, a court may consider factors such as, but not limited to:
> (a) The degree of inherent or acquired distinctiveness of the mark in this state;
> (b) The duration and extent of use of the mark in connection with the goods and services;
> (c) The duration and extent of advertising and publicity of the mark in this state;
> (d) The geographical extent of the trading area in which the mark is used;
> (e) The channels of trade for the goods or services with which the owner's mark is used;
> (f) The degree of recognition of the owner's mark in its and in the other's trading areas and channels of trade in this state; and
> (g) The nature and extent of use of the same or similar mark by third parties.

As plaintiff has offered no proof that his mark is famous, within the contemplation of the statute, his claim for trademark dilution will be dismissed.

In his claim for deceptive trade practice, plaintiff charges that defendant unlawfully held itself out as an authorized user of plaintiff’s mark; but there is nothing to support this charge. His claim for negligent misrepresentation similarly alleges that defendant negligently misrepresented ownership of plaintiff’s mark; but neither is there proof to support this charge.

Plaintiff’s claim for tortious interference with business advantage is premised on his allegation that defendant aired derogatory episodes of “The Joe Schmo Show,” including an episode

titled "Joe Schmo Can't Rap," which it knew or should have known would damage his reputation as a musician. To succeed on a claim for intentional interference with business advantage, plaintiff must demonstrate that "(1) defendant's acts were intentional and willful; (2) defendant's acts were calculated to cause damage to plaintiff in his lawful business; (3) defendant's acts were done with unlawful purpose of causing damage and loss without right or justifiable cause on part of defendant; and (4) actual damage and loss resulted." Christmon v. Allstate Ins. Co., 82 F. Supp. 2d 612, 615 (S.D. Miss. 2000). Defendant submits that summary judgment is mandated on this claim in view of the absence of proof to support any of these elements. The court agrees, and concludes that this claim is due to be dismissed, along with all plaintiff's other claims.

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted.[3]

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 29th day of February, 2008.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[3] Although it concludes that summary judgment should be granted, the court rejects defendant's request for attorney's fees.